JANE BYRNES, Appellant, *v.* WILLIAM BAER et al., Respondents.

Under the provision of the Revised Statutes (2 R. S. 57, § 5), declaring that every will which in express terms devises or in other terms denotes an intent to devise all the testator's real estate, "shall be construed to pass all the real estate which he was entitled to devise at the time of his death," such a will operates upon lands acquired after the making of the will.

In the absence of express words to bring a devise within the statute, the intention must be found in the words of the will; it cannot be inferred from extrinsic facts; the words, however, as in case of other instruments, may be interpreted in the light of the surrounding circumstances.

Where a testator gives in general terms the residue of his estate or property, and there is both real and personal property upon which the will may operate, the testator does thereby manifest an intention to devise all of his residuary real estate, unless a more limited purpose is to be gathered from other clauses of the will.

A devise of the proceeds of lands directed to be sold by the executors is a devise of the land within the statute, although the naked title remains in heirs until sale.

The will of J., after a gift to his wife of his household furniture and of the use of his dwelling-house during her life, directed his executors to invest "all the rest, residue and remainder" of his estate in bonds and mortgages; and after direction as to the disposition of the income therefrom during the lives of his wife and a daughter, upon the death of both, gave the principal to the children of the daughter, etc. The testator acquired certain lands after the execution of the will; *held*, that the direction applied to all the real estate of the testator; that it fairly implied a power of sale for conversion in the executors; and that said lands passed under the will.

(Argued June 6, 1881; decided October 4, 1881.)

Appeal from judgment of the General Term of the Supreme Court, in the first judicial department, in favor of defendant, entered upon an order made April 7, 1880, on a case submitted under sections 1279 and 1281 of the Code of Civil Procedure.

Plaintiff contracted to sell to defendants certain lands; the latter refused to complete the purchase because of alleged defect of title.

The facts submitted were substantially these: In 1867 Joseph Jacobs died seized of the lands in question, leaving a will executed in 1857, which, after providing for the payment of his debts, etc., contained the following clauses:

"*Secondly.*—I give, devise and bequeath to my well-beloved wife all my household and kitchen furniture, jewelry, plate, watches, wines, liquors, stores, wearing apparel, beds, bedding and linen, and all other articles in our usual use in our household, and further, the use of the dwelling-house or the rents, issues and profits thereof, during her life.

"*Thirdly.*—All the rest, residue and remainder of my estate I direct my executors to invest and keep invested in bond and mortgage on property in the city of New York, Brooklyn or Williamsburgh, and the net income derived therefrom I direct them to divide in two equal parts, and pay the one-half of such income to my said beloved wife, and the other half to my well-beloved daughter, Bertha R., during their joint natural lives, and upon the death of either the remaining half of the income to the survivor, unless my daughter have issue, in which event the same shall go to such issue, and upon the death of both, the principal sum shall vest in children of my daughter, if she leave any, or if she die without issue, then the same shall vest in my brothers' and sisters' children equally."

The testator acquired the lands in question after the execution of the will; he left his daughter, said Bertha R., his only heir-at-law, who, claiming that her father died intestate as to said lands, conveyed them by warranty-deed, and plaintiff claimed under said deed through various mesne conveyances.

*Wm. Henry Arnoux* for appellant. Before the adoption of the Revised Statutes it was a legal impossibility for a testator, by any expression of intent in his will, however clear and emphatic it might be, to make a testamentary disposition of subsequently-acquired real property without a republication of his will. (*Green* v. *Dikeman,* 18 Barb. 537; 1 Jarman on Wills, 27, 300, 301; Laws of 1813, March 5; *Ellison* v. *Miller,* 11 Barb. 332; 2 Black. Com. 378; Cruise's Dig., tit. 35, 3; Devise. ch. 3, 25, 26; *Goodtitle* v. *Otway,* 7 T. R. 399; *Lady Strathmore* v. *Bower,* id. 482; *Pond* v. *Bergh,* 10 Paige, 149; *Lynes* v. *Townsend,* 33 N. Y. 558, 561.) The provision of the Revised Statutes (2 R. S. 57; § 5), that every will that denotes an intent to devise all the testator's real estate passes all the real estate he was entitled to devise at the time of his death, being in derogation of the common law, must be strictly construed. (*Waring* v. *Waring,* 17 Barb. 552, 557; *Parsons* v. *Winslow,* 6 Mass. 169; 4 Am. Dec. 107; *Whitney* v. *Whitney,* 14 Mass. 88, 90; *Otis* v. *Prince,.* 10 Gray, 581; *Stearns* v. *Godfrey,* 16 Me. 158; *Randall* v. *Marble,* 69 id. 310; 31 Am. Rep. 281; Roper on Leg. 763; *Spirt* v. *Bence,* Cro. Car. 368.) The words of a will which shall disinherit the heir at common law must have a clear and apparent intent, and not be ambiguous or any way doubtful. (*Pettywood* v. *Cook,* Cro. Eliz. 52; *Gardner* v. *Sheldon,* Vaugh. 259, 262; *Slatter* v. *Noton,* 16 Ves. 197; *Driver* v. *Frank,* 3 M. & S. 25; *Doe* v. *Dring,* 2 id. 448; *Roe* v. *Flood,* 3 Willes, 300; *Doe* v. *Underdown,* id. 293, 297; *Moore* v. *Fogge,* id. 138, 140; *Emblyn* v. *Freeman* Pre. Cha. 541, cited in Leigh & Dalzell on Eq. Conver., 5 Law Liby. 90, 92, 93, 12, 99; *Roper* v. *Radcliffe,* 10 Mod. 230; *House* v. *Chapman,* 4 Ves. 542; *Bristol* v. *Hungerford,* 2 Vern. 644; *Doe* v. *Dring,* 2 M. & S. 445; *Van Kleeck* v. *Dutch Ch.,* 20 Wend. 457, 571; 6 Paige, 600; *Lynes* v. *Townsend,* 33 N. Y. 570; *Wilkinson* v. *Adam,* 2 Ves. & Bea. 466; *Coriton* v. *Hellier,* 2 Cox, 340; *Waring* v. *Waring,* 17 Barb. 552; *Scott* v. *Guernsey,* 48 N. Y. 106–121; 1 Redf. on Wills, 4, 5; *Hayden* v. *Stoughton,* 5 Pick. 536; *Areson* v. *Areson,* 3 Den. 451; *Sherry* v. *Lozier,* 1 Bradf. 450; *Grout* v. *Hap-*

*good*, 13 Pick. 164; *Jackson* v. *Billinger*, 18 Johns. 368; O'Hara on Wills, 78; 7 Cow. 71; *Lefevre* v. *Lefevre*, 59 N. Y. 434, 446; *White* v. *Howard*, 46 id. 144, 170.) The change made by the Revised Statutes (2 R. S. 51, § 5) is not a change in the law itself, but in the construction to be given to the language of a will, so that an intent to convey subsequently-acquired real estate might be effectual, and to this extent only it repealed the common law. It does not make the will speak as of the time of the death of the testator, in relation to realty as with personalty, nor does it enlarge the intent of the testator. (*Parker* v. *Bogardus*, 5 N. Y. 309; *Waring* v. *Waring*, 17 Barb. 552, 557; *Lynes* v. *Townsend*, 33 N. Y. 558; 1 Jarman on Wills, 307; *Webb* v. *Byng*, 1 Kay & J. 580; *Bascom* v. *Albertson*, 34 N. Y. 584, 605.) The respondents hold the affirmative and must establish the proposition that appellant has no title. Every doubt is in appellant's favor. (*Newell* v. *Nichols*, 75 N. Y. 78; *Blaisdell* v. *Hight*, 31 Am. Rep. 278; 69 Me. 306; *Youngs* v. *Youngs*, 45 N. Y. 254, 257; *Roosevelt* v. *Fulton's Heirs*, 7 Cow. 71; *Bogert* v. *Schauber*, id. 187; 2 Wend. 13; *Gold* v. *Judson*, 21 Conn. 616; *Cole* v. *Scott*, 16 Sim. 259.) The word "devise" in its use in this will does not denote any ownership of real property. (*Kalbfleisch* v. *Kalbfleisch*, 67 N. Y. 354, 363.) In the absence of unlimited terms in a will there must be language which will enable the court to see that the testator intended it to operate upon subsequently-acquired real estate. (*Lynes* v. *Townsend*, 33 N. Y. 558; *Van Alstyne* v. *Spraker*, 13 Wend. 582; *Pond* v. *Bergh*, 10 Paige, 149; *Havens* v. *Havens*, 1 Sandf. Ch. 335; *Quinn* v. *Hardenbrook*, 54 N. Y. 83.) The words "all the rest, residue and remainder of my estate," are properly to be referred to the gift of personal property in the second clause of the will. (2 Jarman on Wills, 315; *Marchant* v. *Twisden*, Gibbs' Eq. Cas. 30.) Real estate has been held not to be included in a devise of "the rest and residue" notwithstanding a previous devise of lands. (*Bibb* v. *Pennoyre*, 11 East, 160; *Timewell* v. *Perkins*, 2 Atk. 102; *Roe* v. *Walker*, 3 B. & P. 375; *Newell* v. *Toles*, 17 Hun, 76;

*Bullard* v. *Goffe*, 20 Pick. 252.)   Even the words " all I may die possessed of " have been held not to convey real estate. (*Monk* v. *Maudsley*, 1 Sim. 286.)   In order to work a constructive conversion, an actual sale, either immediately or in the future, absolutely or contingently at a specified time, must be directed either expressly or impliedly. (1 Jarman on Wills, 553 ; *White* v. *Howard*, 46 N. Y. 144, 161.)   To constitute an equitable conversion of real into personal property, in a will, there must be an absolute power of sale given, and the direction to sell must be peremptory.   (*Stagg* v. *Jackson*, 1 N. Y. 206, 209, 212; *Meakings* v. *Cromwell*, 5 id. 136; *Harris* v. *Clark*, 7 id. 242; *Allen* v. *De Witt*, 3 id. 276; *White* v. *Howard*, 46 id. 162.)   An executor does not take by implication an estate in the lands of the testator when all the duties enjoined upon him by the will, in regard to the lands, can be discharged under a power.   (*Tucker* v. *Tucker*, 5 N. Y. 408.)   If it be assumed that by construction there is an implied power of sale, it must be conceded that this is only a naked power and that it gives the executors no legal title, estate, or interest in the land.   (*Russell* v. *Russell*, 36 N. Y. 581.)   The legal title vested in the heir subject to be divested by the execution of the implied power of sale.   (*Crittenden* v. *Fairchild*, 41 N . Y. 289.)

*A. C. Anderson* for respondents.   The testator did not die intestate as to the real estate acquired after the execution of his will.   (2 R. S. [Edm. ed.], 58, § 5 ; *Parker* v. *Bogardus*, 5 N. Y. 309 ; *McNaughton* v. *McNaughton et al.*, 34 id. 201 ; *Young* v. *Young*, 45 id. 254; *Lent* v. *Lent et al.*, 12 N. Y. Weekly Dig. 122.)   In general, the word " estate " will include real estate.   (2 Jarman on Wills [5th Am. ed.], 321, note 2 ; *Given et al.* v. *Hilton et al.*, 5 Otto [U. S.], 591.)   The words " all the residue," so, also, the words " whole estate," have been held as sufficient to show that the testator intended to pass after-acquired real estate.   (1 Jarman on Wills [5th Am. ed.], 157, note ; *Fluke et al.* v. *The Executors of Fluke*, 1 C. E. Green, 479.)   The direction to the executors to invest and

keep invested all. the rest, residue and remainder of his estate, and to apply the income to certain purposes, gave the executors a power by implication to sell and convey the land of the testator. (*Morton* v. *Morton*, 8 Barb. 19 ; *Livingston* v. *Murray*, 39 How. Pr. 102 ; *Meaking* v. *Cromwell*, 5 N. Y. 136 ; *Gourley* v. *Campbell*, 66 id. 169.) The direction to the executors to invest and keep invested all the rest, residue and remainder of his estate in bond and mortgage rendered the sale of the real estate necessary. (Gerard's Title to Real Estate. [2d ed.], 401; *Dodge* v. *Pond*, 23 N. Y. 69 ; *Meaking* v. *Cromwell*, 5 id. 136 ; *Given et al.* v. *Hilton et al.*, 5 Otto [U. S.], 591.) The use of the word " remainder " in the third clause of the will, shows that the testator intended to include his real estate. It is not necessary that the testator should have used the word " devise " to indicate that he intended his real estate to pass under said third clause. (*Clancy* v. *O'Gara*, 4 Abb. N. C. 271.) The language of the third clause of the will in question clearly shows the intention of the testator, that he meant to dispose of all his estate, real and personal, which he had a right to devise at the time of his death. (*Meaking* v. *Cromwell*, 5 N. Y. 136 ; *Fisher* v. *Banta*, 66 id. 468; *Clancy* v. *O'Gara*, 4 Abb. N. C. 268; *Betts* v. *Betts*, id. 317.) The law prefers a construction of a will which will prevent a partial intestacy to one which will permit it. (2 Redf. on Wills, 442 ; *King* v. *Woodhull*, 2 Edm. Ch. 82; *Vernon* v. *Vernon*, 53 N. Y. 351–361 ; *Provoost* v. *Cayler*, 62 id. 550 ; *Given et al.* v. *Hilton et al.*, 5 Otto, 591 ; *Lyman* v. *Lyman*, 22 Hun, 263 ; *Doe, Lessee of Wall*, v. *Langlands*, 14 East, 370.)

ANDREWS, J. The Revised Statutes (2 R. S. 57, § 5) declare that " every will that shall be made by a testator, in express terms, of all his real estate, or in any other terms denoting his intent to devise all his real property, shall be construed to pass all the real estate which he was entitled to devise at the time of his death." This enactment changed the rule which theretofore existed, that a devise could not operate upon lands

acquired by a testator after the making of the will without a re-publication, however clearly such intent was expressed in the testamentary instrument. In *Butler's Case* (3 Co. 30), this doctrine was based upon a construction of the Statutes, 32 and 34 Hen. VIII, which empowered persons "having lands," etc., to devise; and it was held that only such lands as the testator had at the time of making the will, were within the purview of those statutes. It is stated by PARKER, Ch. J., in *Ballard* v. *Carter* (5 Pick. 112), that the rule is founded on the interest which the law always takes in heirs. But, whatever may have been the reason for the rule, it was thoroughly settled.

It cannot be doubted, however, that the rule, in many cases, defeated the intention of testators. A testator understands that his will takes effect only upon his death, and where he in terms devises all his real property, the natural inference is, that he refers to all the real estate he shall then own. Unless specially instructed, he would not understand that a different rule applied to real, from that applied to personal property, or that a republication would be necessary to pass after-acquired property of one kind, and not of the other. The section referred to has abrogated the rule of the common law, and it enacts a new rule of construction, viz., that words of general devise, shall be construed to pass all the real estate which the testator was entitled to devise at his death. It is clear that, to bring a devise within the statute, the testator must make known, by words in his will, his intent to devise all his real estate. His intention cannot be inferred from extrinsic facts. The statute requires, that the intention shall be shown by the will. The words used may be interpreted, as in the case of other written instruments, in the light of surrounding circumstances; but the intention must, after all, be found in the words of the will. Where the will in terms devises all the testator's real estate, without limitation, there is no room for construction. The statute makes the devise to speak as of the time of the testator's death, and all his real estate, which he then owns, and could devise, is comprehended in the disposition. But the statute may operate, although there

be no devise in express terms, of all the testator's real estate. The alternative language is, " or in any other terms denoting his intent to devise all his real property." The construction of this alternative· clause is not free from difficulty. It seems clear, that the legislature contemplated a case where the intent of the testator to devise all his real property might be indicated, in the absence of the specific descriptive terms most usually employed. It would not seem to be necessary, in order to give effect to the alternative provision, that the "other terms" used, should point specifically to thê death of the testator, because all the statute requires in either case is, that the will should show by words *de presenti*, an intention to devise all the testator's real property. If this is shown, then the statute makes the will speak as of the time of his death. The alternative provision is, we think, satisfied, by the use by the testator of words which by construction of law and by usage, comprehend real property, although not exclusively applicable thereto. It has now become an accepted canon of construction of wills, that general words are to be taken to comprehend a subject which falls within their usual sense, unless there is, as said by Lord ELDON, in *Church* v. *Mundy* (15 Ves. 396), "something like a declaration plain to the contrary." In accordance with this rule it is now held, (although contrary to some of the earlier cases), that the words, "estate," "property," etc., used in a residuary clause, are understood in their ordinary sense, and operate upon both real and personal estate, even when terms are afterward used in reference to the devise, more properly applicable to personal property. (*Saumarez* v. *Saumarez*, 4 My. & Cr. 331; *Mayor of Hamilton* v. *Hodsdor*, 6 Moore's P. C. C. 76; *Jackson* v. *Housel*, 17 J. R. 281; 1 Jarm. on Wills, 721.) The general sense of particular words may, be restrained by the context, indicating that they were used in a limited sense or as designating only one species of property, but in the absence of such indication, the testator must be presumed to have used them in the usual and larger sense, and effect is given to them accordingly. Where, since the statute, a testator gives in general

terms the residue of his estate or property, and there is both real and personal property upon which the will may operate, the testator thereby manifests an intention to devise all his real estate, unless a more limited purpose, is to be gathered from the other parts or clauses of the will. We need not decide in this case what construction would be given to general words, where the testator owned no real estate, when the will was made. But where a man makes a will, the fair presumption is that he intends to dispose of all his property ; and if he gives all the residue of his estate, it fairly means that he gives all his property, real or personal, not otherwise disposed of. The Massachusetts statute, provides that all after-acquired interests in real estate shall pass by the will, whenever " such clearly and manifestly appears by the will to have been the intention of the testator; " and in *Cushing* v. *Aylwin* (12 Metc. 169), where a testatrix, who at the time owned no real estate, made her will disposing of " all my property," in trust to certain trustees, their executors, etc., it was held that her intention to dispose of all the real estate she owned at the time of her death, manifestly appeared, and consequently that real estate acquired by her after the making of the will, passed thereby. (See, also, *Loveren* v. *Lamprey*, 22 N. H. 434.)

It only remains to apply to the will now in question, the rules of construction to which we have adverted. The first clause is immaterial to the present inquiry. The second, and third clauses, are as follows : " *Secondly.* I give, devise and bequeath to my well-beloved wife all my household furniture * * * and all other articles in our usual use in our household, and further, the use of *my dwelling-house*, or the rents, issues and profits thereof, during her life. *Thirdly.* All the rest, residue and remainder of my estate, I direct my executors to invest and keep invested in bond and mortgage, on property in the city of New York, Brooklyn, or Williamsburgh, and the net income derived therefrom, I direct them to divide into two equal parts, and pay the one-half of such income to my said beloved wife, and the other half to my well-beloved

daughter, Bertha R., during their joint natural lives, and upon the death of either, the remaining half of the income to the survivor, unless my daughter have issue, in which event the same shall go to such issue, and upon the death of both, the principal sum shall vest in children of my daughter, if she leave any, or if she die without issue, then the same shall vest in my brothers' and sisters' children equally." The testator, as is inferable from the will, owned, at the time the will was made, a dwelling-house. He subsequently acquired the land now in controversy, and the question is whether this subsequently-acquired land passed under the third clause of the will.

By the second clause, the testator devised to his wife a life estate in the dwelling-house. He died intestate as to the remainder, unless it passed under the third clause, and the statute has no application unless the remainder passed under the devise, or unless the legal title descended to the heir, subject to a power of sale vested in the executors, and the income and proceeds were subject to the disposition of that clause, for then, he would not have devised in express terms or by implication all his real estate. Athough the statute speaks of a devise of all the real estate, as the evidence of an intention to pass subsequently-acquired land, we are of opinion that a devise of the proceeds of lands directed to be sold, although it may leave the naked title in the heir, until a sale, is a devise of the land within the statute. If the direction applies to all the real estate of the testator, it unmistakably exhibits his intention to make a complete beneficial disposition of his whole property, and brings the case within the equity of the statute. We think the executors in this case, took either the legal title in remainder to the dwelling-house, in trust for the purposes specified in the third clause, or were vested with a power of sale, to be exercised in behalf of the persons mentioned therein. It is unnecessary to determine which is the true construction, although we are inclined to the opinion that the legal title in trust, was vested by implication of law in the executors. (*Brewster* v. *Striker*, 2 Comst. 19; *Leggett* v. *Perkins*, id. 297; *Vail* v. *Vail*, 4 Pai. 317.) It is true that there are no express

words of devise in the third clause, but this is not essential. (*O'Toole* v. *Browne*, 3 E. & B. 572.) The gift is of·all the rest, residue and remainder of "my estate;" and these words by well-settled construction, unless qualified by other parts of the will, comprehend the remainder in the dwelling-house not devised in the second clause, and all other real estate owned by the testator at the making of the will. It is claimed that the direction to the executors to invest and keep invested, etc., implies that the subject of the gift in the third clause, was money in hand, or personal property, and not land. It is true that these are somewhat inapt words, to apply to land. If so applied, they presuppose a sale of the land, and an investment of the proceeds of the sale. But a direction to invest property, consisting of both real and personal estate in bond and mortgage, may be carried out by a sale of the land, and fairly implies a power of sale for conversion, in the person to whom the direction is given. It is further insisted, that it is unreasonable to suppose that the testator intended, after giving a life estate in the house to his wife, to give her in addition, one-half of the income from the proceeds of its sale. But the power of sale vested by implication in the executors, relates to the remainder only. The intent of the testator apparently was, to secure a house for his wife for life, and beyond this to give her one-half of the income of his property, including any income which might arise from the proceeds of the sale of the remainder in the dwelling-house. The case of *Saumarez* v. *Saumarez* is much like this, in some of its essential features. There, the testator gave to his son Richard, (who was heir,) his free-hold lands, without words of inheritance, and directed that the residue of the property he should leave at his death, be divided between Richard, and his two sisters, in equal proportions, and that the portion of the son, should be placed in the name of trustees, and the interest paid to him during his life, and after his death his share to go to his children, with power to the trustees to employ the interest for their maintenance, and a portion of the capital for their ad-

vancement.   It was claimed that the remainder in the freehold lands did not pass under the residuary clause, but descended to Richard as heir ; and this argument was sought to be enforced by the consideration, that the residuary clause referred to personal estate, and that this was indicated by the words "interest," "capital," "portion," etc.   But the point was overruled, and it was held that the remainder passed, and the court refused to restrain the effect of the words "residue of my property," because the subject of the gift was subsequently referred to in terms, which more appropriately described personal property.

The case before us is not free from difficulty.   The rule that an heir is not to be disinherited without clear evidence of intention is of less force here than in England, where it originated, because the policy upon which it was founded, has not been incorporated into our system.   But as in all cases of testamentary construction, the question is one of intention, to be gathered from the will.   The general words, "rest, residue and remainder of my estate," clearly comprehend real estate, and show an intention to pass all the estate, real and personal, of the testator, not before disposed of, and are not, we think, restrained or limited by the doubtful indications deduced from the subsequent language.

The judgment should, therefore, be affirmed.

All concur.

Judgment affirmed.